IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TIN PACKING LTD., a British Virgin Island Corporation doing business in China, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) NO. 3:22-cv-00642 ) |
| KANG LI, a/k/a JACKIE LI, an individual, | ) JUDGE RICHARDSON ) |
| Defendant. | ) ) ) |

# MEMORANDIUM OPINION

Pending before the court is the motion to dismiss (Doc. No. 14, "Motion") filed by Defendant Kang Li a/k/a Jackie Li along with a memorandum of law. (Doc. No. 15). Plaintiff filed a response (Doc. No. 19), and Defendant filed a reply in support of Defendant's motion to dismiss. (Doc. No. 25).

For the reasons discussed herein, the Court will grant Defendant's motion on Count I but will deny Defendant's motion to dismiss on Count II.

## BACKGROUND[1]

A. Factual Background

Tin Packing Ltd. ("Plaintiff"), the sole remaining Plaintiff in this case, is a business that manufactures and sells disposable packing merchandise such as zip bags, food bags, and trash bags ("Products"). (Doc. No. 1 at 2). Since 2007, Plaintiff has conducted business with Dollar General ("DG") by taking purchase orders from DG. *Id.* Kang Li ("Defendant"), the sole remaining

---

[1] Unless otherwise noted, the following facts, are taken from the Complaint (Doc. No. 1), and are accepted as true for the purposes of the Motion.

Defendant in this case, joined DG in 2018 as the Chief Global Sourcing Officer and is currently the Senior Vice President of DG. *Id.* On March 25, 2020, Plaintiff entered into a valid Master Supply Agreement ("Agreement") with DG, which Defendant signed. (Doc. Nos. 1, 1-1). On June 26, 2020, Defendant called Plaintiff's General Manager, Chang Dong Shen ("Shen"), in Shanghai, China informing him that since Plaintiff and its affiliates had conducted $50 million of business with DG in the previous year, Plaintiff owed Defendant money. (Doc. No. 1 at 3). When Shen responded with a joke to Defendant's statement, Defendant yelled at Shen indicating if Plaintiff did not pay Defendant money, i.e., a "kickback," Defendant would ensure that DG no longer did business with Plaintiff. *Id*. Defendant stated, "'Get the money of $1.5 million ready,' 'You should consider seriously, you could expand your business and $1.5 million is nothing compared to your future business.' 'I am the one who decides the pricing for DG to pay you.' 'Go ahead and get the money ready, someone will contact you, do this right so you won't lose your business.'" *Id*.

On September 30, 2020, Jiguang Shi ("Shi") called Shen, announced that he was sent by "DG Mr. Li," and instructed Shen to transfer 800,000 renminbi (RMB)[2] to him and to transfer 250,000 RMB to him every month. *Id*. Shen did not comply with this instruction. On November 18, 2020, Shi gave Shen a new payment schedule to wire money into a US Bank of America bank account in Irvine, California. According to this schedule, the first payment of $50,000 was due by November, the next $150,000 by December. Additionally, $1.4 million would be sent to a Singapore Bank Account. (Doc. Nos. 1 at 1-4).[3] On November 19, 2020, Plaintiff, through Shen,

---

[2] It appears that as of September 30, 2020, 1 U.S. dollar was worth approximately 6.79 renminbi (the official currency of the People's Republic of China, and at times used synonymously with "yuan"), meaning that 800,000 RMB was worth approximately $117,820. The Court provides this approximation as background information only, and not as information material to its analysis herein.

[3] Plaintiff's complaint notes that Shi's first message to Shen, on September 30, 2020, requested payments in RMB. Shi's subsequent texts to Shen requested the payments in U.S. dollar.

made a written complaint to DG's Vice President of Internal Audit and DG's Chief Marketing Officer against DG and Defendant regarding Defendant's wrongdoings and (allegedly)[4] tortious threat to damage the Plaintiff's economic relationship with DG. (Doc. No. 1 at 1-5). In January 2021, Shen was informed by leaders of Global Sourcing at DG's China Buying office that Defendant ordered him and his office to terminate all of DG's business relationships with Plaintiff. (Doc. No. 1 at 5).

B. Procedural background

On August 19, 2022, Plaintiffs Tin Packing LTD and Chang Dong Shen, a/k/a Davie Shen, filed a complaint (Doc. No. 1) against Defendants Kang Li, aka Jackie Li and Jiguang Shi. The complaint asserted three counts: Count I, tortious interference with contract/inducement of breach of contract pursuant to T.C.A. § 47-50-109; Count II intentional interference with business relationships; and Count III, intentional infliction of emotional distress. (Doc. No. 1 at 6-8). On September 15, 2022,[5] Defendant filed the Motion and memorandum in support. Via the Motion, Defendant sought dismissal under Fed. R. Civ. P. 12(b)(1) for lack of diversity jurisdiction on the grounds that Plaintiffs Tin Packing LTD and Chang Dong Shen, and Defendant Jiguang Shi were all residents of China. (Doc. No. 15 at 4). Alternatively, Defendant seeks to dismiss all counts, asserting a failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Id.* at 5. Plaintiff filed a response (Doc. No. 19), and Defendant filed a reply (Doc. No. 25). On October 17, 2022, upon motions of Plaintiffs (Doc. Nos. 20 and 21) and pursuant to Rule 21 of the Federal Rules of Criminal

---

[4] The Court is intentional here when qualifying "tortious threat" with "allegedly." That is because the characterization of conduct as "tortious"—whether or not such characterization ultimately is vindicated—is not a fact but rather a legal conclusion, and thus is not entitled to the presumption of truth on a motion to dismiss.

[5] All three counts were brought against both Defendants. Count I and Count II were brought only by Plaintiff Tin Packing LTD, and Count III was brought only by Plaintiff Chang Dong Shen. Because, as discussed below, Plaintiff Chang Dong Shen is no longer a party in this case, Count III no longer remains.

Procedure, the Court dropped Plaintiff Chang Dong Shen without prejudice. (Doc. No. 29), and also dropped Defendant Jiguang Shi without prejudice. (Doc. No. 30). This left only Plaintiff and Defendant as parties in this case, and left only Counts I and II pending.

As discussed below, Defendant's motion to dismiss Count I will be granted, while the motion to dismiss Count II will be denied.[6]

## LEGAL STANDARD

For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must take as true all well-pled factual allegations in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679. A legal conclusion, including one couched as factual allegations, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id.*; *Fritz v. Charter Twp. Of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

---

[6] Defendant also moves to dismiss Count III. The Court entered an order to drop Plaintiff Chang Dong Shen (without prejudice), who was the only Plaintiff asserting Count III. (Doc. No. 29). Thus, Count III effectively has already been dismissed (without prejudice).

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atl. Corp. v Twombly*, 550 U.S. 554 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bold" allegations. *Id*. at 681. The question is whether the remaining allegations – factual allegations, *i.e.*, allegations of factual matter – plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Federal Rule of Civil Procedure 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id*. at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Rule 12(b)(6) unless the motion is converted to one for summary judgement under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion dismiss into one for summary judgment. *Doe v Ohio State Univ.*, 219 F. Supp. 3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

On a Rule 12(b)(6) motion to dismiss, "[t]he moving party has the burden of proving that no claim exists." *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 433 (6th Cir. 2008). That is not to say that the movant has some *evidentiary* burden; as should be clear from the discussion above, evidence (as opposed to *allegations* as construed in light of any allowable matters outside the pleadings) is not involved on a Rule 12(b)(6) motion. The movant's burden, rather, is a burden of *explanation*; since the movant is the one seeking dismissal,

it is the one that bears the burden of explaining—with whatever degree of thoroughness is required under the circumstances—why dismissal is appropriate for failure to state a claim.

DISCUSSION

As discussed immediately below, the Court has subject-matter jurisdiction over the case. The Court finds that the complaint fails to plausibly allege a claim of tortious interference with contract/inducement of breach of contract pursuant to T.C.A. § 47-50-109. However, the Court finds that Plaintiff plausibly alleges intentional interference with business relationships.

A. Subject-Matter Jurisdiction

Defendant asserts that this action should be dismissed for lack of subject-matter jurisdiction because complete diversity is lacking. (Doc. No. 15 at 3). "When there is a 12(b)(1) motion and a 12(b)(6) motion, the court is bound to consider the Rule 12(b)(1) motion first, since the Rule 12(b)(6) becomes moot if the court lacks subject matter jurisdiction." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). "Where subject-matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986). Subject-matter jurisdiction, based on diversity, requires complete diversity of citizenship between the plaintiffs and the defendants. Moreover, "[a] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business. . ." 28 U.S.C. § 1332(c).

Defendant makes a so-called facial attack on subject-matter jurisdiction. That is, for purposes of the Motion, Defendant is accepting as true the complaint's allegations related to subject-matter jurisdiction. (Doc. No. 15 at 3-4). And so the Court does likewise. At the time the complaint was filed, Plaintiffs Tin Packing LTD and Chang Dong Shen, and Defendant Jiguang

Shi were all citizens of China, thus defeating diversity jurisdiction. As noted, Plaintiff filed a motion to dismiss Shen and Shi. (Doc. No. 19 at 3-4), which the Court granted. (Doc. Nos. 29, 30). As for the remaining parties, Plaintiff is (as noted) treated as a citizen of China (its principal place of business) and also of the British Virgin Islands (its place of legal formation), as Defendant notes. (Doc. No. 15 at 3-4). And as Defendant also notes, it (Defendant) he is citizen of Tennessee. As a result, complete diversity exists among the sole two remaining parties, and the Court possesses subject-matter jurisdiction over the action.[7]

B. <u>Tortious interference with contract</u>

Defendant argues that Plaintiff has failed to state a claim for tortious interference with contract/inducement of breach of contract pursuant to T.C.A. § 47-50-109 because Plaintiff's complaint does not offer any facts concerning any breach of contract, but instead offers only a "formulaic recitation of this element of the tort." (Doc. No. 15 at 8).

Tennessee recognizes both a statutory and common law action for inducement to breach a contract or intentional interference with contract, and both forms of the tort protect "contracts implied in fact, as well as formal, expressed contracts." *Tennison Bros. v. Thomas*, No. W201301835COAR3CV, 2014 WL 3845122, at *13 (Tenn. Ct. App. Aug. 6, 2014). Tenn. Code Ann. § 47-50-109 provides that:

> It is unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto; and, in every case where a breach or violation of such contract is so procured, the person so procuring or inducing the same shall be liable in treble the amount of damages resulting from or incident to

---

[7] The Sixth Circuit has stated that "a party may not create diversity from dropping a nondiverse and indispensable party," but that "it is appropriate to drop a nondiverse and dispensable party from litigation in order to achieve diversity." *Soberay Mach. & Equip. Co. v. MRF Ltd., Inc.*, 181 F.3d 759 (6th Cir. 1999). Here, Shen and Shi are dispensable parties, and therefore the Court has subject-matter jurisdiction over the action after having dropped them. *See Safeco Ins. Co. of Am. v. City of White House, Tenn.*, 36 F.3d 540 (6th Cir. 1994) (explaining that in order for the dropping of a party to create diversity jurisdiction where it did not previously exist, the party dropped must not be a necessary party under Fed. R. Civ. P. 19).

the breach of the contract. The party injured by such breach may bring suit for the breach and for such damages.

Tenn. Code Ann. § 47-50-109 adopts the common law claim of inducement to breach contract except as to the amount of damages that may be recovered against the wrongdoer. *Myers v. Pickering Firm, Inc.*, 959 S.W.2d 152, 158 (Tenn. Ct. App. 1997); *New Life Corp. of Am. v. Thomas Nelson, Inc.*, 932 S.W.2d 921, 926 (Tenn. Ct. App. 1996) (citing *Emmco Ins. Co. v. Beacon Mut. Indem. Co.*, 204 Tenn. 540, 322 S.W.2d 226 (1959)). "The elements of a cause of action for procurement of a breach of contract are: (1) there must be a legal contract; (2) the wrongdoer must have knowledge of the existence of the contract; (3) there must be an intention to induce its breach; (4) the wrongdoer must have acted maliciously; (5) there must be a breach of the contract; (6) the act complained of must be the proximate cause of the breach of the contract; and, (7) there must have been damages resulting from the breach of the contract." *Meyers*, 959 S.W.2d at 158; *New Life Corp.*, 932 S.W.2d at 926 (citing *Campbell v. Matlock,* 749 S.W.2d 748, 750 (Tenn. Ct. App. 1987); *Dynamic Motel Mgmt., Inc. v. Erwin*, 528 S.W.2d 819, 822 (Tenn. Ct. App. 1975)). Because breach of contract is required for inducement of breach of contract, all elements of breach of contract must also be met.

To demonstrate a breach of contract in Tennessee, it is well established that the essential elements include: (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of contract. *ARC LifeMed, Inc. v. AMC-Tennessee, Inc.,* 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005); *Custom Built Homes v. G.S. Hinsen Co.* No. 01A01-9511-CV-00513 1998 WL 960287 (Tenn. Ct. App. Feb. 6, 1998) (citing *Life Care Centers of Am., Inc. v. Charles Town Assocs. Ltd. P'ship*, 79 F.3d 496 (6th Cir. 1996)).

Plaintiff alleges that the Agreement "was breached and severed by March 2021." (Doc. No. 1 at 7). According to Plaintiff's Complaint, Defendant "intended to induce or procure a breach of

contract between Tin Packing and DG. . ." (Doc. No. 1 at 7). Specifically, Plaintiff alleges that "Mr. Li had put into motion his plan to stop placing purchase orders from DG to Tin Packing as early as March 2021, which was effectuated, and purchase orders from DG completely ceased in September 2021." (Doc. No. 1 at 5). But DG's cessation of purchase orders, even assuming it did occur as alleged, would not have constituted a breach of the Agreement. In its original Complaint, Plaintiff provided the "valid" Master Supply Agreement between Plaintiff and DG. (Doc. No. 1-1). In this Agreement, Section 4.1, "Orders," provides as follows: "Buyer may issue one or more Orders from time to time in its discretion." Section 4.1 also contains the language that "Vendor acknowledges and agrees that any forecasts, estimates or other projections that it receives from Buyer are provided merely for convenience of Vendor and do not: (a) constitute an Order, or (b) otherwise impose any obligation or liability on Buyer in any manner whatsoever." *Id*. at 2. As specified by the language of section 4.1 of the Agreement, DG was under no obligation to place additional orders. Furthermore, although Plaintiff attached a purchase order email exchange between Plaintiff and DG General Global Sourcing Representatives as support that Defendant sought to induce or procure a breach of contract, that email exchange does not show a confirmation of an order that DG placed (only to thereafter back out of). Rather, it shows only that Plaintiff sought to move forward with additional orders and that DG had not promised to purchase the additional items, which was completely valid under the contract. (Doc. No. 1-8 at 1). Plaintiff has not alleged any facts to suggest that Defendant attempted to stop a confirmed order, and likewise has not made any allegations plausibly suggesting that a breach of any kind has occurred. *Id*.

Plaintiff argues that "a claim for relief may be stated for interference with a contract even where neither party has any obligation to continue with the contract." (Doc. No 19 at 7) (citing *Dukes v. Brotherhood of Painters, etc.*, 235 S.W.2d 7 (Tenn. 1950)). However, as noted by

Defendant, at this point of the analysis, the Court is not concerned with whether one can interfere with a contract where neither party has obligation to continue business, but rather whether Plaintiff has adequately alleged a breach of the contract between Plaintiff and DG. (Doc. No. 25 at 3). *Dukes* is best read as creating, in cases involving employment contracts-at-will, an exception to the need to allege breach of contract to state a claim for tortious interference with contracts. The *Dukes* court rested its reasoning on the "employee's right to labor," holding that interference with this right is actionable. *Id.* at 500-501. Plaintiff does not explain why this exception should extend to this case and upend the oft-repeated general requirement that tortious interference with contract involves a breach of contract.

Because Plaintiff did not plausibly allege inducement of breach of contract, the Court will grant Defendant's Motion with respect to Count I.

C. <u>International interference with business relationships</u>

The elements of intentional interference with a business relationship are: "(1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons[8] (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general (3) [t]he defendant's intent to cause the breach or termination of the business relationship (4) the defendant's improper motive or improper

---

[8] The Tennessee Supreme Court adopted the discussion in § 766B comment c of the Restatement (Second) of Torts to explain relations protected through the tort of intentional inference with business relationships. The language provides: "The relations protected against intentional interference by the rule stated in this Section include any prospective contractual relations, except those leading to contracts to marry, if the potential contract would be of pecuniary value to the plaintiff. Included are interferences with the prospect of obtaining employment or employees, the opportunity of selling or buying land or chattels or services, and any other relations leading to potentially profitable contracts. Interference with the exercise by a third party of an option to renew or extend a contract with the plaintiff is also included. *Also included is* interference *with a continuing* business *or other customary* relationship *not amounting to a formal* contract." *Trau-Med*, 71 S.W.3d at 701, (n.4).

means[9] (5) [d]amages resulting from the tortious interference." *Trau-Med of Am., Inc. v Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002).[10]

To show that a defendant acted improperly, the plaintiff must demonstrate that the defendant's predominant purpose was to injure the plaintiff. *Trau-Med*, 71 S.W.3d at 701, (n.5) (citing *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293 (Utah 1982)). Further, *Trau-Med* explained that "the tort of interference with a business relationship requires proof of improper conduct extending beyond the bounds of doing business in a freely competitive economy. An unwillingness to deal with a person or entity for any reason not independently unlawful is not improper." 71 S.W.3d at 701.

First, as alleged by Plaintiff, Plaintiff and DG have a valid written Agreement and Plaintiff has "gone beyond its call of duty to keep up its business goodwill with DG." (Doc. No. 1 at 2). As noted by the Tennessee Supreme Court, "existing business relationships with specific third parties" includes continuing business or other customary relationships. *Trau-Med*, 71 S.W.3d at 701, (n.4) (citing Restatement (Second) of Torts § 766B cmt. c (Am. Law Inst. 1965)). The existence of the Agreement between Plaintiff and DG serves to satisfy the first element of intentional interference

---

[9] To provide further guidance, the Tennessee Supreme Court cited the following methods as some examples of improper interference those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules, violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship and those methods violate an established standard of trade or profession, or otherwise involve unethical conduct, such as sharp dealing, overreaching or unfair competition. *Trau-Med*, 71 S.W.3d at 701, (n.5) (citing *Duggin v. Adams*, 234 Va. 221, 360 S.E.2d 832 (1987)).

[10] Defendant argues that Plaintiff has failed to sufficiently plead Count II, intentional interference with business relationships, because "a sufficiently detailed allegation of breach and/or termination is an indispensable element. . . ." (Doc. No. 25 at 3). Although an adequate allegation is indispensable, an actual breach and/or termination of the contract is not. To survive a 12(b)(6) motion, the Plaintiff need not plausibly allege that the Defendant's act actually caused a breach or termination but rather must plausibly allege that the Defendant intended to cause a termination with improper motive or means, resulting in damages. Damages may result from a breach of contract but may also result from something other than a breach of contract.

with business relationships. Plaintiff has plausibly alleged that Defendant's interference occurred while the Plaintiff and DG had an ongoing business relationship. (Doc. No. 1 at 2).

Second, Plaintiff plausibly alleges that Defendant had knowledge of Plaintiff and DG's relationship. According to the Complaint, Defendant verbally acknowledged Plaintiff and DG's relationship when, in his role as an executive for DG, Defendant stated on June 26, 2020, that "I am the one who decides the pricing for DG to pay you." *Id.* Plaintiff has additionally demonstrated that Defendant had knowledge of the business relationship between Plaintiff and DG in particular and was not aware merely of Plaintiff's business dealings with others in general.

Third, Plaintiff plausibly alleges that Defendant acted with intent to cause a termination of the contract between Plaintiff and DG. For example, Plaintiff highlights that in December 2020, Plaintiff was informed by the leadership of Global Sourcing at DG's China Buying Office that Defendant ordered such leadership (and that office) to terminate all of Plaintiff and DG's business relationships. (Doc. No. 1 at 5). Plaintiffs plausibly allege that Defendant intended to terminate Plaintiff and DG's business relationship. Plaintiff need not allege that a termination occurred, but rather need allege only facts plausibly suggesting that Defendant acted with intent to terminate the contract and Plaintiff has successfully done so.

Fourth, Plaintiff sufficiently alleges that Defendant had an improper motive or means. A person "has the freedom or unfettered discretion to do business or not to do business with whomever he or she chooses for any reason that does not violate the law[.]". *Watson's Carpet & Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 178 (Tenn. Ct. App. 2007); (Doc. No. 1 at 5). That said, Plaintiff's complaint plausibly alleges that Defendant had an improper motive and used improper means in his effort to interfere with Plaintiff's business relationship with DG. (Doc. No. 15 at 8). According to Plaintiff's complaint, Defendant demanded payments— "kickbacks" in

the most classic sense of the term— from Plaintiff. Further, in his conversation with Shen, Defendant allegedly stated that, "I am the one who decides the pricing for DG to pay you" and "[g]o ahead and get the money ready, someone will contact you, do this right so you won't lose your business." (Doc. No. 1 at 3). The Tennessee Supreme Court has noted that improper interference may include "those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules, violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship and those methods violate an established standard of trade or profession, or otherwise involve unethical conduct." *Trau-Med*, 71 S.W.3d at 701, (n.5) (citing *Duggin v. Adams*, 234 Va. 221, 360 S.E.2d 832 (1987)). Defendant's alleged statements to Plaintiff indicate an improper motive and means because they reflect that Defendant allegedly used the threat of loss of business and intimidation to receive kickbacks; it should come as no surprise that an individual's shakedown of his employer's customer for kickbacks (to be received personally by the employee) reflects the kind of impropriety required to satisfy the fourth element. Here, therefore, Plaintiff has adequately alleged that Defendant used improper motive and means.

Fifth, Plaintiff has adequately alleged damages by alleging that "Mr. Li had put into motion his plan to stop placing purchase orders from DG to Tin Packing as early as March 2021, which was effectuated, and purchase orders from DG completely ceased in September 2021." (Doc. No. 1 at 5). According to Plaintiff, Defendant's actions interfered with the amount of sales Plaintiff enjoyed pursuant to its business relationship with DG under their contract. Thus, Plaintiff has adequately alleged that it suffered harm in losing the benefits of a business relationship that had done "$50 million in business with DG in the previous year." *Id. at 3*.

For the reasons discussed above, Plaintiff has plausibly alleged intentional interference with business relationships, and the Court will not dismiss Count II.

## CONCLUSION

For the reasons stated herein, the motion at Doc. No. 14 will be **GRANTED** in part and **DENIED** in part. Specifically, Count I, tortious interference with contract/inducement of breach of contract pursuant to T.C.A. § 47-50-109, will be **DISMISSED**. However, Defendant Kang Li **SHALL** remain as Defendant insofar as the Complaint holds him liable for Count II, intentional interference with business relationships.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE